**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **MICHAEL C. FRENCH,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | **CIVIL ACTION NO. 3:11-CV-0012-O** |
| § | |
| **SCOTTISH RE GROUP LIMITED,** § | **ECF** |
| **SCOTTISH RE (U.S.) INC., AND** § | |
| **SCOTTISH RE LIFE CORPORATION,** § | |
| § | |
| Defendants. § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE COURT:

Plaintiff Michael C. French ("French") complains of Scottish Re Group Limited, Scottish Re (U.S.) Inc., and Scottish Re Life Corporation (collectively, "Scottish Re" or "Defendants") for the following reasons:

**PARTIES**

1.  French is an individual residing in Dallas County, Texas.

2.  Defendant Scottish Re Group Limited ("SRGL") is a foreign corporation, organized under the laws of the Cayman Islands. It has been engaged in doing business in this State, and this suit arises out of business that it did here.

3.  Defendants Scottish Re (US), Inc. and Scottish Re Life Corporation are both Delaware companies, which are licensed as foreign insurance companies and do business in the State of Texas. Upon information and belief, these Defendants are the alter ego of Defendant Scottish Re Group Limited in the United States inasmuch as Scottish Re Group Limited conducts

all of its operations in this country through them, and has transferred the bulk of its assets to them.

4. From time to time, the Defendants hereafter collectively shall be referred to as "Scottish Re" or "Defendants."

## JURISDICTIONAL ALLEGATIONS

5. This case properly is a subject of this Court's jurisdiction. SRGL contractually agreed French could bring suit against it to enforce his rights in the jurisdiction of his choosing. Specifically, SRGL agreed as follows:

> [I]f it should appear to the Indemnitee that the Company has failed to comply with any of its obligations under this Agreement . . . the Company irrevocably authorizes the Indemnitee . . . to retain counsel of his choice, at the expense of the Company . . . to represent the Indemnitee in connection with the initiation of any . . . legal action . . . in any jurisdiction.

*See* ¶7(c) of the Indemnification Agreement. It appears to French that Scottish Re has failed to comply with its contractual obligations to him; he, therefore, exercises his right to retain the undersigned counsel to institute this legal action against Scottish Re in this jurisdiction.

6. Further, Defendants are subject to the general jurisdiction of Texas. Finally, at a minimum, specific jurisdiction exists with respect to the Defendants in connection with the claims French brings in this case. In this regard, French had almost a decade-long relationship with Scottish Re in which he primarily was responsible for managing its business. Indeed, French was one of the individuals involved in SRGL's initial public offering in 1998. Simultaneously with SRGL going public, it employed French as its chief executive officer.

7. At the time French negotiated his employment relationship with SRGL, both parties contemplated a long-term, continuing relationship. And that is exactly what happened. French served as SRGL's chief executive officer until the end of 2004. After that, French served as SRGL's chairman of the board until about the start of 2006. During this entire period, French actively was engaged in SRGL's management. Even after his direct employment relationship with SRGL ceased in May 2006, the relationship continued with his service as a director of SRGL until about May 2007.

8. As SRGL's chief executive officer and chairman, French primarily was responsible for managing the company. At all relevant times during French's employment relationship with SRGL, he lived and maintained an SRGL office in Dallas, Texas. It was from this Dallas, Texas base that French performed most of his management duties for SRGL.

9. French's decision to perform SRGL's primary management function from a Dallas, Texas base was not a unilateral one. SRGL, through its officers and board of directors, concurred in and approved the plan. In fact, in 2000, SRGL formally opened and operated an office at 200 Crescent Court in Dallas, Texas (the "Dallas Office"). The Dallas Office was not a secret: SRGL reported in its public filings, such as its 2003 10-K, that the Dallas Office was one of the offices from which it did business.

10. SRGL purposely directed many of its activities to the Dallas Office, as well. For example, while working in the Dallas Office, French made telephone calls to and received telephone calls from other SRGL employees around the world practically every day. In these telephone calls, the parties discussed and transacted SRGL's business. Additionally, SRGL

PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 3

{00001277.DOC / 2}

employees in Bermuda and other locations frequently corresponded with French via fax and the United States mail, directing those communications to the Dallas Office.

11. SRGL performed some of its contractual obligations in the Dallas Office and in Texas, as well. Among the mail and other items SRGL caused to be delivered to the Dallas Office was French's paycheck.

12. French was not SRGL's only full-time employee based in the Dallas Office. There were three other employees: a secretary, and two others, who essentially served in a sales function. The two sales employees not only used the Dallas Office as a base for their operations, but also sought to and did obtain business from individuals in Dallas and in Texas. Additionally, other SRGL employees, particularly SRGL's president, Scott Willkomm, frequently visited the Dallas Office in furtherance of conducting the company's business.

13. In about mid-2002, the parties executed the Indemnification Agreement upon which French's suit is based. Prior to executing the agreement, SRGL purposefully reached out to French in Texas, offering the benefits of the agreement, in an effort to persuade him to continue his relationship with the company. French understood that SRGL intended him to continue serving SRGL as its chief executive officer, with the hope that his service would bring profit to the company. French recalls that the negotiations related to the Indemnification Agreement took place, in part, in the Dallas Office, and that he ultimately signed the agreement in Dallas.

14. The Indemnification Agreement was not the only written agreement between French and SRGL during the term of their relationship. Among other agreements, there was an

Employment Agreement and an Amendment to Employment Agreement, both of which were negotiated, in part, and ultimately signed by French in the Dallas Office.

15. During French's relationship with SRGL—both as chief executive officer and later as chairman of the board of directors—he served on Scottish Re (U.S.) Inc.'s board of directors, and participated in board meetings telephonically from SRGL's Dallas offices. French also believes that, during this time period, he served on the board of directors of Scottish Re Life Corporation. His recollection is that he participated in Scottish Re Life Corporation's board meetings telephonically from SRGL's Dallas offices; in fact, French recalls that the board meetings for Scottish Re (U.S.) Inc. and Scottish Re Life Corporation often occurred simultaneously.

## JURY DEMAND

16. French already has demanded a jury trial and tendered the appropriate fee in the state court before removal.

## FACTUAL BACKGROUND

A. The Indemnification Agreement—

17. In 1998, SRGL's predecessor, Scottish Annuity & Life Holdings, Ltd., retained French to serve as its Chief Executive Officer and on its board of directors. Approximately 4 years later, to ensure that it could retain his services, SRGL broadly promised French in writing to indemnify him if a claim were ever made against him in any way relating to his service. The Indemnification Agreement, a true and copy of which already has been tendered to the Court and is incorporated by reference, made plain that its intent was to provide French with as broad and generous an indemnity from claims as possible in exchange for his continued service as a Scottish Re officer and board member:

> WHEREAS, *it is essential to the Company* to retain and attract as directors and officers the most capable persons available;
> WHEREAS, Indemnitee is a director, officer, employee and/or agent of the Company;
> *   *   *   *   *   *   *   *   *
> WHEREAS, the Company's Articles of Association (the 'Articles') provide that *the Company will indemnify its directors, officers, employees and/or agents to the fullest extent permitted by law and will advance expenses in connection therewith*, and Indemnitee's willingness to serve as a director, officer, employee and/or agent of the Company is based in part on Indemnitee's reliance on such provisions . . . .

*See* the 1st, 2nd, and 4th "Whereas" paragraphs on page 1 of the Indemnification Agreement (emphasis added).

18.   To assure French that he need not be concerned that its promises of indemnification would be devalued as a result of French being required to endure a litigation gauntlet to realize them, SRGL made the following promise:

> It is the intent of the Company that the Indemnitee not be required to incur the expenses associated with the enforcement of his rights under this Agreement by litigation or other legal action because the cost and expense thereof would substantially detract from the benefits intended to be extended to the Indemnitee hereunder. Accordingly, if it should appear to the Indemnitee that the Company has failed to comply with any of its obligations under this Agreement . . . the Company irrevocably authorizes the Indemnitee from time to time to retain counsel of his choice, at the expense of the Company as hereinafter provided, to represent the Indemnitee in connection with the initiation . . . of any litigation or other legal action . . . in any jurisdiction.  Regardless of the outcome thereof, the Company shall pay and be solely responsible for any and all costs, charges and expenses, including, without limitation, attorneys' and other fees and expenses, reasonably incurred by Indemnitee . . . as a result of the Company . . . contesting the validity or enforceability of this Agreement or any provision thereof as aforesaid.

*See* ¶7 (c) of the Indemnification Agreement.

19. This paragraph contained an extremely important and valuable promise to French. It was one thing for SRGL to *say* that it did not intend to make it difficult for French to realize the value of the indemnity; it was quite another for SRGL *actually to commit itself* to put its money where its mouth was. By agreeing that French could sue SRGL—in *any* jurisdiction he considered convenient—if it ever appeared to him that SRGL was not fulfilling its indemnity obligations, coupled with its promise that SRGL would pay his legal fees and costs incurred in such an action on a current basis, whether he ultimately prevailed on the merits or not, SRGL contractually placed itself in a position that it could not simply refuse to pay French in hopes of starving him out. Instead, SRGL made explicit promises and commitments to French that leveled the playing field: if French felt SRGL was not honoring its indemnity, he could file suit, and SRGL not only would be required to pay its own lawyers' fees and costs, but French's, as well.

20. Further, to induce French to continue providing his services to Scottish Re, which obviously at that point valued them, SRGL pledged that its promised protection would be firm and everlasting, exempt from the typical vicissitudes of time:

> WHEREAS, in recognition of Indemnitee's need for substantial protection against personal liability *in order to enhance Indemnitee's continued service to the Company in an effective manner*, and Indemnitee's reliance on the aforesaid provisions of the Articles, and in part *to provide Indemnitee with specific contractual assurance that the protection promised by such provisions will be available to Indemnitee regardless of, among other things, any amendment to or revocation of such provisions or any change in the composition of the Company's Board of Directors or any acquisition or business combination transaction relating to the Company*, the Company wishes to provide in this Agreement for the indemnification and the advancement of expenses to Indemnitee as set forth in this Agreement.

*See* the 5th "Whereas" paragraph on page 1 of the Indemnification Agreement (emphasis added).

**PLAINTIFF'S FIRST AMENDED COMPLAINT - PAGE 7**

21. In substance, the Indemnification Agreement provides, in part:

> [Scottish Re] shall indemnify . . . [French] who was or is a party or is threatened to be made a party to any Claim by reason of (or arising in whole or in part out of) an Indemnifiable Event, against any liability or expense actually and reasonably incurred, including, without limitation, attorney's fees and other fees and expenses . . . .

*See* ¶2(a) of the Indemnification Agreement.  Both "Claim" and "Indemnifiable Event" broadly are defined in the Indemnification Agreement.  A "Claim" is defined as:

> [A]ny threatened, pending or completed action, suit or proceeding, or any inquiry or investigation that Indemnitee in good faith believes might lead to the institution of any such action, suit or proceeding, whether civil, criminal, administrative, investigative (including, without limitation, an action by or in the right of the Company) or other.

*See* ¶1 (1.1) of the Indemnification Agreement. "Indemnifiable Event" is defined as follows: "The term 'Indemnifiable Event' shall mean any actual or asserted event or occurrence related to the fact that [Mr. French] is or was a director, officer, employee, agent, or fiduciary of [Scottish Re] . . . ."  *See* ¶1 (1.2) of the Indemnification Agreement.

B.  <u>Scottish Re's Articles of Association</u>—

22. As stated in the Indemnification Agreement, French also is entitled to indemnity from claims under Article 116(a) of Scottish Re's Articles of Association (the "Articles"), which provide, in part, as follows:

> Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a 'proceeding'), by reason of the fact that he or she . . . is or was a director, officer, employee or agent of the Company . . . whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent,

> shall be indemnified and held harmless by the Company . . . against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines or penalties and amounts paid or to be paid in settlement) reasonably incurred by such person in connection therewith and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent . . .

23. Additionally, similar to the Indemnification Agreement, the Articles provide that French's defense costs are to be paid by Scottish Re on a current basis:

> The right to indemnification conferred in this Article 116 shall be a contract right and shall include the right to be paid by the Company the expenses incurred in defending any such proceeding in advance of its final disposition . . . .

C.  French Fulfills His Part of the Bargain—

24. After executing the Indemnification Agreement, French kept his commitments to Scottish Re. He continued to provide valuable and faithful service to Scottish Re until May 2007. Scottish Re accepted French's performance, without reservation, and has never had anything but praise for his service.

D.  French Provides Notice of a Claim and Requests Indemnity—

25. In July 2010, the Securities and Exchange Commission filed a complaint in the United States District Court for the Southern District of New York, in part, making claims against French related to his service as an officer of Scottish Re (the "Complaint"). The Complaint contains claims that clearly are encompassed by the Indemnification Agreement's "Claim" and "Indemnifiable Event" definitions: the Complaint is a pending civil action, and includes claims arising out of French's service as a director, officer, employee, agent, and/or fiduciary of Scottish Re. Moreover, the Complaint contains claims obviously encompassed by

the Articles: French has been made a party to a suit by reason of the fact that he was a director, officer, employee or agent of Scottish Re.

26.  There is nothing in the Indemnification Agreement that permits SRGL to pay for only part of the expenses relating to a Claim. SRGL did not bargain for and did not include a provision, for example, permitting it to segregate the various causes of action in a lawsuit and pay for the expenses relating to one or more claims while not paying for others.

27.  On August 19, 2010, French notified Scottish Re of the Complaint, in writing, and requested indemnity. Scottish Re never responded in writing to this request. After about six weeks, Scottish Re finally responded orally. When it did, Scottish Re questioned whether French already had released his rights to indemnity, and requested French to provide his views on the subject.

28.  On October 8, 2010, French provided Scottish Re with a written response, demonstrating that he had never released his rights under either the Indemnification Agreement or the Articles. French also repeated his request for indemnity, and asked that he be reimbursed for the legal costs he had incurred as of that date. Pursuant to the Indemnification Agreement, French also presented a sworn undertaking in connection with the amount of legal fees and costs he had incurred as of that date.

29.  When he did, French triggered Scottish Re's obligation to authorize payment for the amount of his request within 10 days. Further, French triggered Scottish Re's obligation to, immediately after such approval, provide payment to him of the requested funds. *See* ¶ 4(b) of the Indemnification Agreement. Scottish Re failed and refused, however, to meet this obligation.

30.  Additionally, French's letter triggered a 30 day time period in which Scottish Re was required to determine and notify French, in writing, whether he was entitled to indemnity.

French's written submission created a presumption that French was entitled to the indemnity that he sought. Scottish Re could only overcome this presumption and make a negative determination "based upon clear and convincing evidence . . . that Indemnitee is not entitled to indemnification . . . ." If Scottish Re made such a finding, in order to deny French's request for indemnification, Scottish Re was required to provide French with written notice of its denial, within thirty days of French's submission, disclosing "with particularity the evidence in support of the . . . determination." *See* ¶ 4 of the Indemnification Agreement.

31.     Thirty days came and went, but Scottish Re maintained its silence. As a result, under the Indemnification Agreement, Scottish Re is deemed to have accepted and approved French's request for indemnity.

E.      Scottish Re Repudiates its Promises—

32.     After persuading French to continue providing his "essential" services, knowing he was relying on its unconditional commitment to provide him indemnity; after accepting French's performance of his obligations; and after being substantially enriched as a result of French's expertise and service, Scottish Re has now repudiated its commitment to French, abandoning him at precisely the moment it promised to have his back.

33.     After blowing both the 10 and 30 day mandatory deadlines to respond under the Indemnification Agreement, Scottish Re belatedly wrote to French on November 29, 2010, telling him only it had "serious concerns" as to whether the Complaint triggered its duties to provide indemnity. The letter wholly failed to meet Scottish Re's obligations to respond to French's claim; for example, it did even purport to set forth any "clear and convincing evidence" that demonstrated French was not entitled to indemnity, as required by the Indemnification Agreement. Instead, the letter sought to cover its failure to meet the mandatory deadlines—and the resulting deemed finding that French is entitled to the indemnity he seeks—by lamely

arguing that French's October 8, 2010 letter did not constitute a valid request for indemnity under the terms of the Indemnification Agreement.

34. French subsequently submitted a Second Undertaking. Scottish Re has failed and refused to pay it, as well.

35. French has been forced to file this action in this jurisdiction. Scottish Re has breached the Indemnification Agreement and has caused French to incur substantial attorneys' fees by moving to dismiss the case based upon an alleged lack of jurisdiction.

36. French has requested that Scottish Re pay the attorney's fees and expenses he is being forced to incur in this action, as promised by the Indemnification Agreement. Scottish Re has refused. French has sought an early resolution of this issue by moving for judgment on the pleadings, but Scottish Re has resisted an early resolution, resorting to legal technicalities to extend the litigation. Thus, in clear breach of its promises in the Indemnification Agreement, it is waging a litigation war of attrition, substantially devaluing the promised indemnity.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

37. French incorporates the preceding paragraphs as if fully set forth herein. All conditions precedent required to make this claim have been performed by French, have occurred, or have been excused. French and Scottish Re entered into the Indemnification Agreement. French performed his obligations under the Indemnification Agreement, and Scottish Re breached the contract by failing to provide the payments to which French is entitled, as set forth in the contract provisions referenced above. French has suffered actual damages as a result of Scottish Re's breach of contract for which he now sues.

# COUNT II
# DECLARATORY RELIEF

38. French incorporates the preceding paragraphs as if fully set forth herein. French is a person interested under a written contract whose rights, status, and legal relations are affected by that contract. As a result, French asks the court to enter a declaratory judgment against SRGL and/or Scottish Re as follows:

a) French's October 8, 2010 letter triggered SRGL and/or Scottish Re's obligation to determine French's claim for indemnification and respond to it, in writing, within 30 days;

b) SRGL and/or Scottish Re's failure to respond to French's claim for indemnification in writing within 30 days results in a deemed finding that French is entitled to the indemnity he seeks;

c) SRGL and/or Scottish Re were required to approve payment to French of the amount set out in his sworn undertakings within ten days of presentment;

d) SRGL and/or Scottish Re have an obligation to approve and pay amounts in accordance with sworn undertakings presented by French in the future;

e) SRGL and/or Scottish Re's claim that French released his rights to indemnification is unfounded;

f) The Complaint includes claims that trigger French's right to indemnity under the Indemnification Agreement and the Articles;

g) SRGL and/or Scottish Re are required by the Indemnification Agreement to pay the legal costs French has incurred in defending against the Complaint to date;

h) SRGL and/or Scottish Re agreed in the Indemnification Agreement that jurisdiction in this Court would be appropriate under these circumstances;

i) At a minimum, SRGL and/or Scottish Re agreed in the Indemnification Agreement that jurisdiction in this Court would be appropriate in an action by French to recover his legal costs and expenses incurred in an action brought by him if it appeared to him that the Defendants had failed to comply with their obligations under the Indemnification Agreement;

j) SRGL and/or Scottish Re are required by the Indemnification Agreement to pay all the legal costs and expenses French has incurred to date in the instant action, which was brought by him because it appeared to him that the Defendants had

failed to comply with their obligations under the Indemnification Agreement;

k) SRGL and/or Scottish Re are required by the Indemnification Agreement to pay all the legal costs incurred in the future, in this or any other court, relating to a proceeding brought by French because it appeared to him that the Defendants had failed to comply with their obligations under the Indemnification Agreement;

l) SRGL and/or Scottish Re are required by the Indemnification Agreement to pay all the legal costs incurred in this or any other court, relating to a proceeding brought by French because it appeared to him that the Defendants had failed to comply with their obligations under the Indemnification Agreement, regardless of the outcome of such litigation, and even if it ultimately is determined that French is not entitled to the indemnity he seeks;

m) French's rights to recover as set forth in the Indemnification Agreement do not violate relevant indemnification law and do not violate public policy;

n) Scott Willkomm had either authority or apparent authority to execute the Indemnification Agreement, and SRGL and the Defendants are estopped to assert that Mr. Willkomm lacked authority to execute the Indemnification Agreement on behalf of SRGL; and

o) SRGL's promises to French in the Indemnification Agreement, including but not limited to SRGL's promise to pay French's legal fees and expenses regardless of the outcome, do not exceed the corporation's powers as delineated in SRGL's Articles of Association

## COUNT III
## ATTORNEYS' FEES AND COSTS

39. Pursuant to applicable law, the Indemnification Agreement, the Articles of Association, and other relevant agreements, French hereby sues Scottish Re for costs of court and reasonable and necessary attorneys' fees. French has fulfilled all conditions precedent to recovery under this cause of action.

## **CONCLUSION**

WHEREFORE, French respectfully requests that he have judgment against SRGL and/or Scottish Re for actual damages consistent with the allegations above, and that he recover costs, attorneys' fees, pre and post judgment interest, and such other relief, both at equity and at law, to which he may be entitled.

Respectfully submitted,

s/ Bobby M. Rubarts
Bobby M. Rubarts
State Bar No. 17360330
Email:  bobby.rubarts@koningrubarts.com
Brent E. Basden
State Bar No. 24047828
Email:  brent.basden@koningrubarts.com

**KONING RUBARTS LLP**
1700 Pacific Avenue, Suite 1890
Dallas, Texas  75201
Telephone: (214) 751-7900
Facsimile:  (214) 751-7888

- And -

Danny Ashby
State Bar No. 01370960
Email:  danny.ashby@klgates.com

**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, Texas  75201
Telephone: (214) 939-5500
Facsimile:  (214) 939-5849

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing Plaintiff's First Amended Complaint was electronically filed with the Clerk of the Court for the U.S. District Court, Northern District of Texas on April 1, 2011, and that notice of the filing of same is being electronically served on the following counsel of record:

        **Dewey & LeBouef LLP**
        Lyle Roberts
        George E. Anhang
        1101 New York Avenue, NW
        Washington, D.C. 20005
        Telephone: (202) 346-8000
        Fax: (202) 346-8102

        Chris W. Lacy
        RR1 Energy Plaza
        1000 Main Street, Suite 2550
        Houston, Texas 77002
        Telephone: (713) 287-2026
        Fax: (713) 445-2126

                      s/ Bobby M. Rubarts
                      Bobby M. Rubarts